**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
DORA E. GUTIERREZ-BONILLA,

                      Plaintiff,

          - against -

TARGET CORPORATION and
TARGET DEPARTMENT STORE,

                    Defendants.
-----------------------------------------------------------X

                               **ORDER**

                        CV 08-3985 (JS) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.     PRELIMINARY STATEMENT

      Plaintiff Dora E. Gutierrez-Bonilla ("Plaintiff" or "Gutierrez-Bonilla") brings this action

for injuries resulting from an accident which occurred while Plaintiff was shopping at a Target

store on July 4, 2009. Plaintiff alleges that the presence of liquid on the floor caused her to slip

and fall. Presently before the Court is Plaintiff's motion [DE 24] for the imposition of sanctions

upon Defendants for the spoliation of video surveillance purportedly showing the floor on which

Plaintiff fell.[1] I have reviewed Plaintiff's motion [DE 24] and supplemental letter [DE 27], as

well as Defendants' opposition [DE 26] to the motion. For the reasons set forth below,

Plaintiff's motion is DENIED.

II.     BACKGROUND

      During the October 15, 2009 discovery conference, a dispute arose as to the nature of a

Target employee's deposition testimony -- namely, whether the witness testified that there were

surveillance cameras in the aisle where Plaintiff's accident occurred. Following that conference,

---

[1]     In the same motion [DE 24], Plaintiff also moved for leave to take an additional
deposition, which I granted by Order dated December 9, 2009 [DE 28].

I directed Defendant's counsel to submit an affidavit from an individual at the Target store in question who is responsible for the surveillance cameras addressing (1) whether any surveillance camera was/is in place in the aisle where the incident occurred; (2) whether other surveillance cameras located in that Target store could have captured any footage of the incident at issue; and (3) Target's policy and/or practice with regard to retention of surveillance tapes.[2] *See* DE 21. Thereafter, Defendant submitted the affidavit of Genaro Rodriguez, a current Target employee who worked as the Executive Team Leader of the Assets Protection team at the Target store in question on the date of Plaintiff's accident. *See* DE 26, Ex. 2 ("Rodriguez Aff.") ¶¶ 1-2.[3] In his affidavit, Rodriguez states that at the time of Plaintiff's accident (July 2006), Target used "a digital and VHS based recording system . . . [which] was replaced in July 2007." *Id*. ¶ 5. Rodriguez further asserts that "there was no surveillance camera set upon the aisle where plaintiff's alleged accident occurred." *Id*. ¶ 6. "[T]here was one camera in an adjacent aisle that covered a small portion of the floor of the aisle where plaintiff's alleged accident occured[,]" and this was the only camera "potentially capable of capturing any footage of the incident at issue." ¶¶ 7-8. However, Rodriguez is "unable to state with any certainty whether this camera was

---

[2]  I further directed that if the individual who handled these responsibilities in 2006 is no longer employed by Target, then Defendant's counsel should have the individual currently performing those responsibilities complete an affidavit to the best of his knowledge addressing the issues and further to address whether, and to what extent if any, the surveillance camera positions have changed since 2006 and whether the policy or procedures regarding retention of surveillance cameras and surveillance data have changed since 2006. *See* DE 21.

[3]  A redacted copy of Rodriguez's affidavit is annexed as Exhibit 2 to Defendants' opposition. The redactions pertain to certain aspects of the surveillance systems previously and currently used by Target. Plaintiff does not object to and the Court finds no issue with the redactions.

capable of capturing any footage of the incident at issue." *Id*. ¶ 8. Finally, with regard to

Target's policy for retaining surveillance tapes, Rodriguez stated as follows:

> In July 2006, it was Target's practice to recycle surveillance VHS tapes every 30 days. Additionally, all tapes in use as of []⁴ 2007 were discarded when the system was replaced. The surveillance system in place today also recycles surveillance footage [].
>
> The VHS tape from July 4, 2006 would have been re-used no later than August 3, 2006, unless the footage was preserved in connection with an incident. I performed a search of all preserved footage at the store. There was no such footage from July 4, 2006.

*Id*. ¶¶ 9-10.

In the instant motion, Plaintiff argues that she is entitled to an adverse inference

instruction because Defendant "could have, and normally would have, preserved the tapes 'in

connection with an incident', but either deliberately or negligently destroyed those tapes."

DE 24. Plaintiff asserts that in order to prove her case, she must show "notice of the dangerous

condition, either actual or constructive . . . [and] by destroying the tapes, [Defendant] has

substantially denied the plaintiff the ability to prove that essential and required element of her

case." *Id*. Thus, Plaintiff contends, the Court should impose sanctions upon Defendants in the

form of an order stating that "the issue of notice of the dangerous condition" has been "resolved

against the defendant." *Id*.

In opposition, Defendants assert that the store's surveillance tapes from July 4, 2006 did

not contain footage showing either Plaintiff's fall or the condition of the floor during the relevant

time period. *See* DE 26. Defendants further argue that, even if such video footage had existed,

they were not put on notice that such tapes should be preserved. *Id*. On or about July 21, 2006

---

⁴       The "[]" indicates words that were redacted from the affidavit.

(two weeks after Plaintiff's accident), Defendants received a letter from Attorney Steve Giano

stating that he represented Ms. Gutierez-Bonilla "for personal injuries and other damages

sustained as a result of" the July 4, 2006 incident at Target. DE 26, Ex. 1. Mr. Giano asked

Target, *inter alia*, to "direct all future inquires and correspondence to this claim" to his office,

and to pay "all medical bills to all providers on behalf of [his] client." *Id*. However, according

to Defendants, this letter did not constitute notice to preserve the store's video surveillance from

July 4, 2006. Moreover, Defendants did not receive any further notice from Plaintiff's counsel,

nor did they receive any discovery demands whatsoever in this action within the permissible time

period for discovery. DE 26. Furthermore, because Defendants recycled the surveillance footage

from July 4, 2006 in accordance with their "normal business practices," Plaintiff cannot show

that such tapes were "recycled 'with a culpable state of mind.'" *Id*. Finally, Defendants contend

that Plaintiff has not shown that the surveillance footage from the day of the accident would have

supported her case. *Id*.

## III.   DISCUSSION

### A.      Applicable Law

"Spoliation is 'the destruction or significant alteration of evidence, or the failure to

preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'"

*In re WRT Energy Sec. Litig.*, 246 F.R.D. 185, 194 (S.D.N.Y. 2007) (quoting *Byrnie v. Town of

Cromwell,* 243 F.3d 93, 107 (2d Cir. 2001)). The court has the inherent power to impose

sanctions for the spoliation of evidence, even where there has been no explicit order requiring the

production of the missing evidence. *See Residential Funding Corp. v. DeGeorge Fin. Corp.,* 306

F.3d 99, 106-07 (2d Cir. 2002*)*. Determination of the appropriate sanction, if any, is confined to

the sound discretion of the trial judge, and is assessed on a case-by-case basis. *See Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423, 436 (2d Cir. 2001).

Among the permissible sanctions for spoliation is "an inference that the evidence would have been unfavorable to the party responsible for its destruction." *Port Auth. Police Asian Jade Soc'y of N.Y. & N.J., Inc. v. Port Auth. of N.Y. & N.Y.*, 601 F. Supp. 2d 566, 569 (S.D.N.Y. 2009) (quoting *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)).  Such a sanction is known as an "adverse inference."  To prove that spoliation merits an adverse inference instruction to the jury, the moving party must demonstrate:

> (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a 'culpable state of mind'; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Residential Funding,* 306 F.3d at 107 (quoting *Byrnie,* 243 F.3d at 107-12).  The moving party bears "the burden of proving that the alleged spoliator had an obligation to preserve evidence, acted culpably in destroying it, and that the evidence would have been relevant to the aggrieved party's case." *Ramirez v. Pride Develop. & Constr*., 244 F.R.D. 162, 164 (E.D.N.Y. 2007).

### B.    Analysis

#### 1.    Duty to Preserve

A party seeking an adverse inference instruction must show "that the party having control over the evidence had an obligation to preserve it at the time it was destroyed." *Residential Funding,* 306 F.3d at 107.  Here, Plaintiff Gutierrez-Bonilla must demonstrate that Defendant

Target was obligated to preserve the video surveillance from the date of Plaintiff's accident rather than having the tape recycled.

Plaintiff's accident occurred on July 4, 2006. On that date, Jose Estrella, a Target employee, was working as an Executive Team Leader at the Target store in question. *See* DE 21, DE 26. According to Estrella's deposition testimony, 15 to 20 minutes after Plaintiff's fall, Estrella "investigat[ed] the incident" and asked a member of the store's Asset Protection team whether "there was any surveillance of that area."[5] DE 26, Ex. 3 ("Estrella Dep."), 86:4-13, 87:6. After checking in the video room, the Asset Protection team member informed Estrella that there were "no camera shots of the aisle" in which Plaintiff's accident occurred during the relevant time period.[6] *Id*. at 88:12-22. Furthermore, in his affidavit, Genaro Rodriguez, the Executive Team Leader of the Asset Protection team on duty on the date of Plaintiff's accident, states that he "performed a search of all preserved footage at the store [and] [t]here was no such footage from July 4, 2006." Rodriguez Aff. ¶ 10.

The Second Circuit has held that a party's obligation to preserve evidence

> arises when the party has notice that the evidence is relevant to litigation--most commonly when suit has already been filed, providing the party responsible for the destruction with express notice, but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation.

---

[5] During his deposition, Estrella testified that he does not recall the name of the Asset Protection team member whom he asked to check whether there was any video surveillance of the area in which Plaintiff's accident occurred. Estrella Dep., 86:11-22.

[6] Estrella testified that he asked the Asset Protection team member for video footage for the previous thirty minutes because that is the time period in which Plaintiff reported that her accident occurred. *Id*., 87:22-88:6.

*Glover v. Costco Wholesale Corp.*, 153 Fed. Appx. 774, 776 (2d Cir. 2005) (quoting *Kronisch,*

150 F.3d at 126). Here, even assuming that Defendants' obligation to preserve the videos arose

on the day of Plaintiff's accident, as Plaintiff now argues, Defendants complied with that duty by

immediately checking the video room for footage of the incident and of the aisle in which the

incident occurred. According to Rodriguez, he searched all of the store's preserved video

footage and did not find any related to Plaintiff's accident. Likewise, Estrella testified that a

member of Target's Asset Protection Team was sent to check the video footage and reported that

there were no camera shots of the aisle. Plaintiff has not produced any documentary or

testimonial evidence to the contrary and consequently has not produced and information to

establish that Defendants breached their duty to preserve the evidence.

Moreover, even if this Court were to reject Defendants' representations that the video

surveillance sought by Plaintiff never existed, Plaintiff would still not have satisfied her burden

of proving that Defendants breached their obligations to preserve such footage. Courts in the

Second Circuit have consistently denied motions for spoliation sanctions where the moving party

did not seek to inspect the evidence within a reasonable time. *See*, *e.g.*, *Allstate Ins. Co. v.*

*Hamilton Beach/Proctor Silex, Inc.*, 473 F.3d 450, 458 (2d Cir. 2007) (reversing decision to

grant adverse inference instruction, in part, because defendant had not requested preservation of

the evidence at issue); *Fujitsu*, 247 F.3d at 436 (affirming denial of sanctions, in part, because

defendant had never asked to inspect the evidence at issue). In the instant case, Plaintiff did not

serve *any* preservation notice upon Defendants at any time prior to initiating this litigation or

during the course of discovery. As discussed above, the letter Defendants received from

Plaintiff's counsel approximately two weeks after the accident did not inquire about or request

preservation of any video footage of the incident. *See* DE 26, Ex. 1. Rather, Plaintiff's counsel

in that letter announced his representation, directed that all further inquires be sent to his office,

and further directed Target to pay his client's medical bills. *Id.* Likewise, the Court is unaware

of any discovery demands served by Plaintiff pertaining to preservation or inspection of any

videos during the course of discovery, which ended on July 28, 2009, as set forth in the

December 3, 2008 Case Management and Scheduling Order [DE 8].[7] Accordingly, Plaintiff has

not shown that Defendants breached their duty to preserve the video footage at issue here.

### 2. Culpable State of Mind

Assuming, for purposes of this motion only, that the video surveillance sought by

Plaintiff had existed at one time, that Defendants were obligated to preserve such footage, and

that Defendants breached that duty, Plaintiff must also show that Defendants destroyed the

videos with a culpable state of mind. "Even where the preservation obligation has been

breached, sanctions will only be warranted if the party responsible for the loss had a sufficiently

culpable state of mind." *In re WRT,* 246 F.R.D. at 195 (citations omitted). Sanctions may be

imposed if the moving party proves that the responsible party acted "intentionally or in bad faith"

or with negligence. *Id.* at 195-96 (citations omitted) ("negligence alone is sufficient to justify the

imposition of some sanction"). However, courts in New York have regularly held that "[in the

absence of pending litigation or notice of a specific claim, a defendant should not be sanctioned

---

[7]     At the October 15, 2009 Discovery Conference, I considered Plaintiff's requests to take
additional discovery. *See* Oct. 15, 2009 Civil Conf. Minute Order [DE 21]. After reviewing the
parties submissions [DE 16, 18, 19] and hearing from the parties during the Conference, I noted
that "[d]iscovery is closed and has been closed for some time, with the exception of several items
discussed today. *Id.* I granted, in part, Plaintiff's requests, to the very limited extent set forth in
the October 15 Minute Order. However, at no time during that conference or any other
conference did Plaintiff mention a request to inspect Defendants' surveillance video footage.

for discarding items in good faith and pursuant to its normal business practices." *Conderman v. Rochester Gas & Elec. Corp.*, 262 A.D.2d 1068, 1070, 693 N.Y.S. 2d 787, 789 (N.Y. App. Div., 3d Dep't 1999) (citations omitted) (cited in *Sage Realty Corp. v. Proskauer Rose LLP*, 275 A.D.2d 11, 18, 713 N.Y.S. 2d 155, 160 (N.Y. App. Div., 1st Dep't 2000)); *see also Goldstone v. TJ Maxx, Inc.*, 12 Misc. 3d 1152(A), 2006 WL 1320629, at *3 (N.Y. Sup. Ct., Richmond County May 3, 2006) (finding that, where defendants recycled video surveillance from date of plaintiff's accident in accordance with regular store policy, plaintiffs had not established that defendant's conduct was willful contumacious, or in bad faith . . .; that it was negligent . . . ; or that it deprived them of the means of proving their claim . . . .").

It is undisputed that, at the time of Plaintiff's accident, it was Target's practice to recycle the store's surveillance tapes every thirty days. *See* Rodriguez Aff. ¶ 9. It is further undisputed that the store's tape from July 4, 2006 would have been reused no later than August 3, 2006, "unless the footage was preserved in connection with an incident." *Id*. ¶ 10. As discussed above, the only "notice" received by Defendants with regard to Plaintiff's incident was Attorney Giano's July 21, 2005 letter [DE 26, Ex. 1], notifying Defendants that Attorney Giano represented Plaintiff "for personal injuries and other damages sustained as a result of an accident" at the Target store in question. Attorney Giano's letter did not mention surveillance video footage from the date of Plaintiff's accident. Furthermore, in the instant motion, Plaintiff does not point to any other correspondence sent by Attorney Giano or subsequent counsel for Plaintiff which would have served as notice to Defendants that they were obligated to preserve such video footage. Thus, even if the video footage sought here by Plaintiff had existed as of August 3, 2006, Defendants were not obligated to preserve such footage. Moreover, by recycling the tapes before

the instant litigation was filed and in accordance with their normal business practices,[8] Defendants cannot be said to have done so with the requisite "culpable state of mind." *See Goldstone*, 2006 WL 1320629, at \*3 ("given the testimony of defendant's present store manager that store videotapes routinely are recorded over unless a significant event warrants their retention, and that of the current loss-prevention manager that the area of plaintiff's fall would not necessarily be under constant surveillance, it cannot be said that the routine re-use of the tapes was contumacious or wilful . . . ."); *Higgins v. Armored Motor Serv. of Am., Inc.*, 13 A.D.3d 1087, 1088, 788 N.Y.S.2d 544, 545 (N.Y. App. Div., 4th Dep't 2004) (affirming denial of spoilation sanctions where "the videotape was recycled by defendant before litigation and as a normal business practice"); *Arnez v. Duane Reade, Inc.*, 824 N.Y.S.2d 767, 767, 2006 NY Slip Op 51586U, at \*2 (N.Y. Sup. Ct., Richmond County, May 3, 2006) ("sanctions would be inappropriate here since the videotape was recycled in the normal course of defendant's business prior to notice of this litigation") (citations omitted).

### 3. Relevance

Finally, to obtain an adverse inference instruction, the moving party must establish that the unavailable evidence is "relevant" to its claims or defenses. *See Residential Funding,* 306 F.3d at 108 (citing *Byrnie,* 243 F.3d at 109; *Kronisch,* 150 F.3d at 128). The Second Circuit has explained that in the spoliation context, relevant "means something more than sufficiently

---

[8]    The Court notes that this discussion is based upon a loosely based assumption that the video footage sought by Plaintiff had existed in the first place. However, as discussed above, Plaintiff has presented only conclusory allegations regarding the surveillance tapes, while there is sworn testimony from Defendants' employees that the inspected tapes showed no camera shots of the aisle in question. In light of these circumstances, the Court finds that Defendants' recycling of the videos from July 4, 2006, after confirming that such footage did not exist, and in accordance with its normal business practices, was not done with a culpable state of mind.

probative to satisfy Rule 401 of the Federal Rules of Evidence."[9]  *Id*.  The moving party "must

adduce sufficient evidence from which a reasonable trier of fact could infer that the destroyed or

unavailable evidence would have been of the nature alleged by the party affected by its

destruction."  *Id*. at 109 (citations omitted); *see also Port Auth. Police Asian Jade Soc'y*, 601 F.

Supp. 2d at 570 ("For the purpose of spoliation, 'relevant' means that the evidence is of the type

that a reasonable jury could find harmful to the spoliatior's case.").

The moving party "bears the burden of showing that there is a 'likelihood that the

destroyed evidence would have been of the nature alleged.'"  *Hamilton v. Mount Sinai Hosp.*,

528 F. Supp. 2d 431, 444 (S.D.N.Y. 2007) (quoting *Kronisch*, 150 F.3d at 127).  Where evidence

is destroyed in bad faith, the spoliator's intentional destruction of the evidence supports an

inference that the evidence was relevant.[10]  *See Port Auth. Police Asian Jade Soc'y*, 601 F. Supp.

2d at 560 (citing *Residential Funding,* 306 F.3d at 109).  Where the spoliation is done with

negligence, whether sanctions are warranted depends upon the circumstances of the case.  *Id*.

---

[9]      Rule 401 provides as follows:

> "Relevant evidence" means evidence having *any* tendency to make
> the existence of any fact that is of consequence to the determination
> of the action more probable or less probable than it would be without
> the evidence.

Fed. R. Ev. 401 (emphasis in original).

[10]      Under the three-part test for determining whether to impose spoliation sanctions, the issue
of whether evidence was destroyed with a "culpable state of mind" is separate from the relevance
prong of the test.  However, the issue of whether the materials were in fact unfavorable to the
culpable party is an issue of fact to be determined by the jury.  *Residential Funding,* 306 F.3d at
109 n.4 (citing *Byrnie*, 243 F.3d at 109-10).  Accordingly, a court's role in evaluating the
"relevance" factor in the adverse inference analysis is limited to insuring that the moving party
"had adduced enough evidence of the contents of the missing materials such that a reasonable
jury *could* find in its favor."  *Id*. (Emphasis in original.)

(citing *Residential Funding,* 306 F.3d at 108; *Reilly v. Natwest Mkts. Group Inc.*, 181 F.3d 253, 267 (2d Cir. 1999)). If the spoliator's state of mind is insufficient to show that the missing evidence was favorable to the moving party, the moving party may submit other proof tending to demonstrate that the missing evidence would have been favorable to it. *See In re WRT,* 246 F.R.D. at 198.

Here, to establish a *prima facie* case, Plaintiff must prove that Defendants had either actual or constructive notice of the dangerous condition which allegedly caused her injury. Thus, Plaintiff seeks video footage showing the condition of the floor in order to prove that Defendant had notice of the presence of the liquid on which Plaintiff purportedly slipped and fell. Plaintiff maintains that by recycling the tapes from July 4, 2006, Defendants have deprived her of the ability to prove the required element of notice in her case. *See* DE 24.

It is undisputed that if Defendants' video surveillance from July 4, 2006 showed Plaintiff's accident or the condition of the floor at the time she fell, such footage would be relevant (and indeed, very important) to Plaintiff's case. However, as discussed above, in the face of sworn testimony, unrefuted by Plaintiff, that the store's video surveillance from July 4, 2006 did not include any footage of the aisle in which Plaintiff fell during the time period at issue, such footage as existed is not relevant to the instant case. Thus, Plaintiff has not shown that the requested evidence would have supported her case.

IV.    CONCLUSION

For all of the foregoing reasons, Plaintiff has not satisfied the three-part test necessary to impose sanctions upon Defendants for spoliation of evidence. Accordingly, Plaintiff's Motion is DENIED.

12

**SO ORDERED.**

Dated:  Central Islip, New York
        December 16, 2009


                                        /s/ A. Kathleen Tomlinson
                                        A. KATHLEEN TOMLINSON
                                        U.S. Magistrate Judge